**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOANG VAN NGUYEN,<br>Petitioner,<br>v.<br>JOSHUA JOHNSON, WARDEN OF ADELANTO ICE PROCESSING CENTER, ET AL.,<br>Respondents. | Case No. 5:26-cv-05067-AJR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.

## INTRODUCTION

On September 2, 2026, Petitioner Hoang Van Nguyen (A# 021-463-034) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 3-4.) On September 4, 2026, Petitioner filed an *Ex Parte* Motion for Temporary Restraining Order. (Dkt. 8.) Pursuant to General Order 26-05, Respondents Joshua Johnson, Warden of Adelanto ICE Processing Center,

Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), David Venturella, Acting Director of Immigration and Customs Enforcement ("ICE"), Todd Blanche, Attorney General of the United States, Thomas P. Giles, Los Angeles Field Office Director of ICE, DHS, ICE, and the Executive Office of Immigration Review ("EOIR") (collectively, "Respondents") were required to show cause why the Petition should not be granted no later than September 10, 2026. (Dkt. 7.) Respondents did not do so and therefore have consented to the relief sought in the Petition. See C.D. Cal. L.R. 7-12. On September 14, 2026, Petitioner filed a Reply in Support of the Petition (the "Reply"). (Dkt. 10.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 5, 11.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel and supported by a declaration from Petitioner. (Dkt. 1 at 37-44.) Respondents were required to show cause why the Petition should not be granted no later than September 10, 2026, but did not do so. (Dkt. 7.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a fifty-two-year-old immigrant, born in Vietnam, who has been living in the United States since he was two years old. (Dkt. 1 at 7.) Petitioner has now spent more than fifty years in the United States. (Id. at 7-8.) After arriving in the United States, Petitioner's family lived in Florida, Louisiana, Texas, and

Oklahoma before settling in California, where Petitioner has lived since 2001. (Id. at 8.) Petitioner is now married to a U.S. citizen and has seven children. (Id.) Petitioner is the primary breadwinner for his family and works eight hours a day setting up and operating machine tools, managing warehouse operations, and taking on additional jobs on the weekends to provide for them. (Id.) Since Petitioner's detention, his wife has had to work two to three jobs to keep the family afloat and she has been struggling to eat and sleep. (Id.) Petitioner is an active member of his Catholic parish, where he spends much of his free time volunteering and helping fellow parishioners, and attends Mass with his family every Sunday. (Id.) Outside of work and church, Petitioner devotes himself to his children, taking them to the park and spending as much time with them as he can. (Id.)

In 1995, Petitioner was attacked and later convicted of possession of a firearm. (Id. at 11.) Petitioner was ordered removed from the United States on August 13, 1999, and spent around two and a half years in ICE detention. (Id.) In 2001, Petitioner was released under an Order of Supervision ("OSUP") and reported for all of his required check-ins from 2001 to 2007. (Id.)

In 2007, Petitioner was stabbed. (Id.) He struck back at his attacker and was subsequently charged with assault with a deadly weapon. (Id.) Petitioner was arrested and imprisoned from 2007 until 2015. (Id.) After completing his sentence, Petitioner was released on another OSUP—the same OSUP under which he lives today, issued on August 25, 2015. (Id.) Petitioner reported for all of his annual required OSUP check-ins from 2015 to 2020. (Id.) In 2020, Petitioner was told by an ICE agent that he did not need to check in because of the COVID-19 pandemic. (Id. at 11-12.) Petitioner did not return to the ICE offices until 2022, where he was again told by an ICE agent that reporting was suspended because of the ongoing nature of the pandemic. (Id. at 12.) Following ICE personnel's instructions, Petitioner waited for the agency to notify him of the time and place to appear, but the agency never resumed notifying him of the time and place to appear. (Id.)

On June 26, 2026, while he was driving to work, Petitioner was pulled over by ICE officers and informed that they had a warrant for his arrest. (Id.) The officers brought him to the Santa Ana ICE office and informed him that he failed to report for check-ins. (Id.) Petitioner explained that he was following instructions from ICE agents who told him not to check-in because of the pandemic in 2022, and that the agency never notified him of the time and place to appear. (Id.) Petitioner was told that this did not matter and has been held at the Adelanto ICE Processing Center since the date of his arrest. (Id.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count I) is that his continued detention violates his substantive due process rights. (Dkt. 1 at 18-24.) Petitioner's second claim for relief (Count II) is that his re-arrest and detention without prior notice or a pre-deprivation hearing violated his procedural due process rights. (Id. at 24-28.) Petitioner's third claim for relief is that his removal to a country other than Vietnam without a meaningful opportunity to seek withholding of removal in reopened removal proceedings violates his due process rights. (Id. at 28-31.) Petitioner's fourth claim for relief (Count IV) is that his re-arrest and detention violated the Administrative Procedure Act ("APA"). (Id. at 31-34.) Petitioner seeks immediate release from custody and an order enjoining Respondents from re-detaining Petitioner absent compliance with the procedures set forth in 8 C.F.R. §§ 241.4, 241.13, and any other applicable statutory and regulator procedure. (Id. at 34-35.) Petitioner further seeks an order enjoining Respondents from removing Petitioner to a country other than Vietnam without first providing a meaningful opportunity for Petitioner to seek withholding of removal in reopened removal proceedings. (Id. at 35.) Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id.)

**IV.**

**LEGAL STANDARD**

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner has been living in the United States since he was two years old and has now spent more than fifty years in the United States. (Dkt. 1 at 7-8.) It is further undisputed that Petitioner was released from

immigration custody and placed under an OSUP in 2001.[1] (Id. at 11.) It is further undisputed that Petitioner was again placed on an OSUP on August 25, 2015. (Id.) Thus, the Court concludes that once Petitioner was released from custody on supervision, Petitioner acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the length of time he has resided out of custody and built a life for himself in California, where he has lived since 2001. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, it is undisputed that Petitioner is now married to a U.S. citizen, has seven children, is the primary breadwinner for his family, is an active member of his Catholic parish, and is devoted to his children, taking them to the park and spending

---

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

as much time with them as he can. (Dkt. 1 at 8.) Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody. See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was re-detained by immigration authorities on June 26, 2026, while driving to work and was not provided with prior notice or a pre-deprivation hearing. (Dkt. 1 at 12.) It is further undisputed that Petitioner was told that he was being arrested because he failed to report for check-ins, but ICE personnel had specifically told Petitioner that he no longer needed to appear for check-ins due to the pandemic. (Id.) Thus, the Court concludes that Petitioner's re-detention by immigration authorities on June 26, 2026, without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal

quotation marks omitted). The last uncontested status here is Petitioner's release from custody under his prior OSUP. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[2] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety

[2] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because it is undisputed that Petitioner reported to all of his annual required OSUP check-ins from 2015 to 2020 and only stopped appearing because he was told by ICE personnel that reporting was suspended due to the COVID-19 pandemic. (Dkt. 1 at 11-12.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Additionally, given the fact that immigration authorities have been unable to remove Petitioner to Vietnam for the past 27 years, (Dkt. 1 at 11-12), the Court further concludes that Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal. See, e.g., Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a country other than Cuba, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)."). Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b), and the Due Process Clause. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. See Aden, 409 F. Supp. 3d at 1019.

Moreover, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." Aden, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); accord A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); Gomez v. Mattos, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); M.T.M. v. Andrews, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing

here. Petitioner has suffered an irreparable injury by being re-detained in violation of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner and remove him to a third country, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing, as well as basic due process requirements before removal to a third country.[3]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. (Dkt. 1 at 35.) The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs

---

[3] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action."). In sum, the Court GRANTS the relief clearly sought in the Petition. (Dkt. 1 at 34-35.) Respondents were required to show cause why the Petition should not be granted no later than September 10, 2026, but did not do so. (Dkt. 7.) Thus, the Court concludes that Respondents have consented to the Court granting the relief requested in the Petition. See C.D. Cal. L.R. 7-12. The Court also concludes that Petitioner has established a *prima facie* case entitling him to the relief requested and Respondents declined to present any fact or argument to oppose the requested relief. Thus, the Court concludes that Petitioner is entitled to the relief requested in the Petition based on the Court's consideration of the merits of Petitioner's claims, separate and apart from the fact that Respondents have consented to such relief being granted.

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Hoang Van Nguyen (A# 021-463-034) ("Petitioner") from custody on his prior Order of Supervision ("OSUP") and return any confiscated property and documents upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1231 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall not attempt to remove Petitioner to any country other than Vietnam without first providing

written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3). Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: September 18, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE